**In the Matter of the Application of The BUFFALO NEWS, A DIVISION OF BERKSHIRE, HATHAWAY, INC., and Dan Herbeck for the Unsealing of Documents filed in Magistrate Proceeding 95–M–1043.**

No. 97–MC–2.

United States District Court,
W.D. New York.

Feb. 5, 1997.

Stenger & Finnerty, Buffalo, NY (John H. Stenger, of counsel), for The Buffalo News and Dan Herbeck.

Jones, Wyatt & Roberts, Denver, CO (Stephen Jones, Robert Nigh, Jr., Randall T. Coyne, of counsel) for Timothy James McVeigh.

Joel L. Daniels, Buffalo, NY, for Jennifer McVeigh.

## DECISION and ORDER

FOSCHIO, United States Magistrate Judge.

On April 25, 1995, the undersigned issued a search warrant for the premises at 6289 Campbell Boulevard, Pendleton, New York, the residence of William McVeigh and his daughter, Jennifer McVeigh. The McVeighs are, respectively, the father and sister of Timothy James McVeigh, who, at the time the search warrant was issued, was a suspect in the tragic bombing of the Murrah Federal Building in Oklahoma City. Timothy McVeigh and another person, Terry Nichols, were subsequently indicted for this crime and are awaiting trial in the United States District Court in Denver, Colorado.

To facilitate the intense investigating efforts of the Government, the search warrant and application were sealed by the undersigned on April 22, 1995 and except for opening and resealing on April 24, 1995 to file the return, and again on August 10, 1995 to make a copy for pretrial discovery purposes, the papers have remained sealed until the court took the instant motion under advisement.

Since April, 1995, the court has received several informal requests from the media for access to the search warrant. Each time, upon being advised by the Government that there was a continuing investigative need to maintain the warrant under seal, the court verbally and by letter response to written inquiries, declined to unseal the documents.

On January 10, 1997, Petitioner moved by order to show cause to unseal the warrant and related filings as to the McVeigh residence.

On January 13, 1997, the Government, by affidavit of Kathleen Mehltretter, Assistant United States Attorney, stated she had conferred with the Government's prosecution team in the McVeigh case and advised the court that the Government had no objection to the requested unsealing. ("Government's Affidavit")

However, on January 22, 1997, Timothy McVeigh filed his opposition to the motion. On January 21, 1997, Jennifer McVeigh filed her opposition to the motion. Petitioners filed their reply memorandum on January 23, 1997.[1] Oral argument was deemed unnecessary.

In his opposition, Timothy McVeigh argues that if the warrant papers were unsealed and made public, his "fair trial rights would be undermined." Timothy McVeigh's Opposition to Application to Unseal Documents Filed in Magistrate Proceeding 95–M–1043 ("T. McVeigh Opposition") at p. 2. In her opposition papers, Jennifer McVeigh contends that unsealing "could jeopardize her

---

1. Although William McVeigh has not filed any opposition, the court has, based on the opposition of Jennifer McVeigh, considered his privacy interests in the matter.

privacy interests." Jennifer McVeigh's Opposition to Application of Buffalo News and Dan Herbeck filed January 21, 1997 ("J. McVeigh Opposition") at p. 1.

For the reasons which follow, the motion is GRANTED, in part and DENIED, in part subject to limited redactions necessary to protect the personal privacy interests of Jennifer McVeigh and William McVeigh.

■ First, there is no dispute among the parties that Timothy McVeigh has been indicted and that neither Jennifer McVeigh nor her father, William McVeigh, is a target of the investigation. Second, given the posture of the case against Timothy McVeigh, and the fact that the Government has no objection to the unsealing, the court finds that the public's interest in access to a search warrant which has been executed and filed in the Clerk's office of this court has attached to the warrant at issue as a public document. *Nixon v. Warner Communications,* 435 U.S. 589, 597–99, 98 S.Ct. 1306, 1312–13, 55 L.Ed.2d 570 (1978); *Application of Newsday, Inc.,* 895 F.2d 74, 79 (2d Cir.1990) (recognizing warrant and related applications as public document filed under seal "subject to common law right of access").

Timothy McVeigh argues that unsealing the warrant with the attendant publicity will deprive him of a fair trial. Certainly, this court is mindful of McVeigh's Sixth Amendment rights. But the question is whether the public's right of access under the First Amendment can be overcome by findings that there is a "substantial probability that the defendant's right to a fair trial will be prejudiced by publicity that closure would prevent and, second, that reasonable alternatives to closure cannot adequately protect the defendant's fair trial rights." *Press–Enterprise Co. v. Superior Court,* 478 U.S. 1, 14, 106 S.Ct. 2735, 2743, 92 L.Ed.2d 1 (1986). McVeigh asserts that the requested unsealing would invite publication of material similar to information which the district court judge, Hon. Richard P. Matsch, assigned to his trial, has refused to unseal. T. McVeigh Opposition at p. 2. However, Petitioners note that, according to the Government's Affidavit filed in this matter, Judge Matsch has been aware of this application and this court

has not received any indication that Judge Matsch has expressed any concern regarding the instant application to unseal the warrant papers for the McVeigh residence. Government's Affidavit at ¶ 4. Further, Timothy McVeigh's papers in opposition fail to establish, as required under *Press–Enterprise Co., supra,* why there is a substantial probability that McVeigh's right to a fair trial will be prejudiced and that reasonable alternatives to non-disclosure cannot adequately protect his fair trial rights. *Press–Enterprise Co., supra.* The Court's observations in *Press–Enterprise* that careful voir dire can screen out jurors "whose knowledge of the case would disable them from rendering an impartial verdict," and that "[t]he First Amendment right of access cannot be overcome by the conclusory assertion that publicity might deprive the defendant of that right [to a fair trial]" are apposite to the issue here. Accordingly, the court finds no justification to refuse Petitioners' request on this ground.

■ However, the Second Circuit has recognized that the public's right of access is "qualified by recognition of the privacy rights of the persons whose intimate relations may thereby be disclosed." *Application of Newsday, Inc., supra,* at 79. Courts should therefore exercise discretion to avoid unjustified disclosure of such intimate personal information by ordering redactions of the requested documents as needed to protect the individual privacy interests of "innocent third parties as well as those of defendants'." *Id.* There is no dispute that neither Jennifer nor William McVeigh is a target of the investigation relating to the Oklahoma bombing. Applying this standard, the court finds that certain information listed in the warrant's return and a statement attributed to Mr. William McVeigh contained in the application qualify as protectable information under the "intimate relations" exception to disclosure.

The first item relates to the titles of books seized from Ms. McVeigh's bedroom in the Pendleton residence, as listed in the warrant's return; the second reflects William McVeigh's description of his children's political beliefs as stated in the affidavit in support of the application. There can be no better example of the zone of privacy a person

residing in our society should enjoy than what books he or she chooses to read. Further, it cannot be gainsaid that information a parent learns from a child regarding the child's beliefs is knowledge derived from an intimate relationship. While either may for whatever reason choose to reveal the information, that is a prerogative that derives from their respective privacy interests in the statement. The fact that it is already known to government agents is irrelevant to the issue presented here just as the facts of the redacted matters approved in the *Newsday* case were also already known to investigators. There is a significant difference between the risk of a further loss of privacy through public disclosure by a government agent compared to the impact on such privacy flowing from the likelihood of publication of accessed material by the media. The court will, accordingly, make the redactions it finds necessary and justified from any copies of the requested warrant materials prior to their release.

## CONCLUSION

Based on the foregoing, Petitioner's motion to unseal the warrant filed under 95–M–1043, together with its related application and return, is GRANTED, in part and DENIED, in part. Copies of the requested materials shall be made available on Thursday, February 13, 1997 at 10:00 A.M.

SO ORDERED.